469 S.E.2d 123

**Donald L. MAGAHA, Plaintiff Below, Appellee,**

v.

**Linda M. MAGAHA, Defendant Below, Appellant.**

**No. 22913.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 17, 1996.

Decided March 22, 1996.

John C. Skinner, Jr., Deborah B. Hillyard, Stephen Gibson Skinner, Nichols & Skinner, L.C., Charles Town, for Appellant.

Peter L. Chakmakian, Charles Town, for Appellee.

**PER CURIAM:**

This action is before this Court upon an appeal from the final order of the Circuit Court of Jefferson County, West Virginia, entered on November 2, 1994. The circuit court determined therein that a 1984 award of alimony in a divorce order payable to the appellant, Linda M. Magaha, by the appellee, Donald L. Magaha, was, in fact, rehabilitative alimony. Upon that determination, and indicating that a substantial period of time had passed since the divorce, the circuit court reduced the alimony payments from $525 per month to $50 per month.

This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. For the reasons stated below, this Court holds that the 1984 alimony award was for permanent alimony, rather than rehabilitative alimony. Furthermore, this Court observes that neither the recommendation of the family law master nor the final order of the circuit court contains findings concerning any change in the circumstances of the parties since the divorce, with regard to a modification of the 1984

alimony award. Accordingly, the final order is reversed, and the alimony payment of $525 per month is ordered to be reinstated.

## I

The facts are largely undisputed. The parties were married in 1959. In 1983, the appellee filed a complaint in the Circuit Court of Jefferson County seeking a divorce upon the ground of irreconcilable differences. *W.Va.Code,* 48–2–4 [1981]. Pursuant to an order entered on October 30, 1984, the parties were divorced. Of the two children of the parties, one was over 18 years old at the time of the divorce, and the other was 17 years old.

The order of October 30, 1984, incorporated the parties' Separation and Property Settlement Agreement. The Agreement provided as follows with regard to the payment of alimony:

Husband shall pay to Wife as alimony, maintenance and support for herself, the sum of $525.00 per month beginning on December 1, 1983 and continuing on the first day of each month without interruption for any reason through a payment due on November 1, 1986. It is expressly agreed between the parties that said payment shall not be subject to judicial review and shall be payable in all circumstances including the death or remarriage of either party. Beginning on December 1, 1986, and continuing monthly through November 1, 1987, the Husband shall continue to pay said payment, but the payment shall be terminated if prior to the monthly payment then due, the Wife shall have remarried or died. After the payment occurring on November 1, 1987, the alimony payable herewith shall be subject to judicial review.

The Separation and Property Settlement Agreement, and divorce order, also provided, *inter alia,* that a rent free dwelling house would be made available to the appellant by the appellee. The dwelling house belonged to a cattle farm business owned and operated by the appellee and his family. Moreover, although neither the Agreement nor the divorce order provided for the payment of child support with regard to the parties 17–year–old child, those documents indicated that the

appellee would bear the responsibility for certain expenses concerning the child's education and medical care. That child reached the age of majority eight months after the entry of the October 30, 1984, order.

The record indicates that at the time of the divorce, the appellant's annual income from various sources was approximately $12,700, and the appellee's annual income was about $15,500. The appellant was 41 years old at the time of the divorce and did not have a high school diploma. Moreover, the appellant testified that she suffered a back injury in 1986 which resulted in continuing problems. The appellant is presently working part-time as a receptionist. Although the current financial circumstances of the parties were disputed below, the record indicates generally that those circumstances have remained relatively unchanged since the 1984 divorce and that the annual income of the appellee, who remarried in 1993, has increased.

In February 1988, the appellee filed a petition to terminate alimony. Pursuant to an order entered in October 1989, however, the circuit court denied relief, stating that "there has been no material change in circumstances which would justify termination of alimony." In so ruling, the circuit court stated that it assumed that the alimony payable to the appellant by the appellee was permanent alimony, rather than rehabilitative alimony.

Subsequently, in June 1994, the appellee again filed a petition to terminate alimony. The petition was referred to a family law master who conducted an evidentiary hearing on July 25, 1994. During the hearing, the family law master stated that, inasmuch as a substantial period of time had passed since the 1984 divorce order, the intent of the alimony had been satisfied. Consequently, the family law master recommended a reduction in alimony payments from $525 per month to $50 per month.

As noted in the final order of November 2, 1994, the circuit court adopted the recommendation of the family law master. In particular, the circuit court concluded that the appellant was "capable of rehabilitating her-

self and becoming fully employed" at the time of the 1984 divorce. Moreover, the circuit court accepted the views of the family law master that a substantial period of time had since passed and that the intent of the alimony had been satisfied. Thus, the circuit court reduced the alimony payments from $525 per month to $50 per month. Neither the recommendation of the family law master nor the final order of the circuit court, however, contains findings concerning any change in the circumstances of the parties since the 1984 divorce.

## II

A recommended order of a family law master is reviewable by a circuit court pursuant to statute, *W.Va.Code*, 48A–4–16 [1993], *W.Va.Code*, 48A–4–20 [1993], and pursuant to this Court's *Rules of Practice and Procedure for Family Law.* As we recently observed in syllabus point 1 of *Stephen L.H. v. Sherry L.H.,* 195 W.Va. 384, 465 S.E.2d 841 (1995): "A circuit court should review findings of fact made by a family law master only under a clearly erroneous standard, and it should review the application of law to the facts under an abuse of discretion standard." The final order of a circuit court in such cases is, of course, reviewable by this Court. *Hinerman v. Hinerman,* 194 W.Va. 256, 259, 460 S.E.2d 71, 74 (1995); *Marilyn H. v. Roger Lee H.,* 193 W.Va. 201, 204, 455 S.E.2d 570, 573 (1995).

In particular, as we recently observed in syllabus point 4 of *Burgess v. Porterfield,* 196 W.Va. 178, 469 S.E.2d 114 (1996): "This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo.*" *See also Phillips v. Fox,* 193 W.Va. 657, 661, 458 S.E.2d 327, 331 (1995). In *Phillips,* we cited syllabus point 1 of *Burnside v. Burnside,* 194 W.Va. 263, 460 S.E.2d 264 (1995), which states:

In reviewing challenges to findings made by a family law master that also were adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review.

Syl. pt. 1, *Summers v. Summers,* 195 W.Va. 224, 465 S.E.2d 224 (1995); *Storrs v. Storrs,* 195 W.Va. 21, 23, 463 S.E.2d 853, 855 (1995); *Young v. Young,* 194 W.Va. 405, 408, 460 S.E.2d 651, 654 (1995).

In this action, the appellant contends that the circuit court abused its discretion in determining that the 1984 award of alimony was for rehabilitative alimony, rather than for permanent alimony. Moreover, the appellant asserts that the circuit court abused its discretion in substantially reducing the award of alimony in the absence of findings concerning any change in the circumstances of the parties. The appellee contends, however, that the alimony provided by the 1984 divorce order was not a permanent award and that the reduction was justified because the appellant no longer had the responsibility of supporting a minor child and, further, because a rent free dwelling house had been made available to the appellant.

The concept of rehabilitative alimony was discussed by this Court in the leading case of *Molnar v. Molnar,* 173 W.Va. 200, 314 S.E.2d 73 (1984). In syllabus point 1 of that case, we observed that rehabilitative alimony "generally connotes an attempt to encourage a dependent spouse to become self-supporting by providing alimony for a limited period of time during which gainful employment can be obtained." In particular, we held in *Molnar* in syllabus point 3:

There are three broad inquiries that need to be considered in regard to rehabilitative alimony: (1) whether in view of the length of the marriage and the age, health, and skills of the dependent spouse, it should be granted; (2) if it is feasible, then the amount and duration of rehabilitative alimony must be determined; and (3) consideration should be given to continuing jurisdiction to reconsider the amount and duration of rehabilitative alimony.

*See also* syl. pt. 3, *Hinerman, supra;* syl. pt. 2, *McVay v. McVay,* 189 W.Va. 197, 429 S.E.2d 239 (1993); syl. pt. 4, *Miller v. Miller,* 189 W.Va. 126, 428 S.E.2d 547 (1993); syl. pt. 1, *Kapfer v. Kapfer,* 187 W.Va. 396, 419 S.E.2d 464 (1992); syl. pt. 4, *Wyant v. Wyant,* 184 W.Va. 434, 400 S.E.2d 869 (1990); syl. pt. 13, *Bettinger v. Bettinger,* 183 W.Va. 528, 396 S.E.2d 709 (1990); syl., *Queen v. Queen,* 180 W.Va. 121, 375 S.E.2d 592 (1988); syl. pt. 2, *Cross v. Cross,* 178 W.Va. 563, 363 S.E.2d 449 (1987); syl. pt. 5, *Butcher v. Butcher,* 178 W.Va. 33, 357 S.E.2d 226 (1987); 95 W.Va.L.Rev. 469 (1992–93); *Annot.,* 97 A.L.R.3d 740 (1980).

In *Molnar,* the parties were divorced after twenty-five years of marriage, and although the wife, 53 years old, had been employed during the marriage, her income was small compared to that of her husband. The wife was awarded rehabilitative alimony by the circuit court. However, discussing the length of the marriage and the wife's age and limited opportunities in the job market, this Court, in *Molnar,* remanded the case to the circuit court for a reconsideration of the alimony issue. Importantly, we noted in the *Molnar* opinion that "[i]n cases where rehabilitative alimony is found to be proper, it is important that sufficient findings of fact be made by the circuit court that would explain the basis for the rehabilitative alimony award." 173 W.Va. at 205, n. 8, 314 S.E.2d at 78, n. 8. *See also, Gorby v. Gorby,* 180 W.Va. 60, 62, 375 S.E.2d 424, 426 (1988).

In the *Queen* case, *supra,* this Court reversed an award of rehabilitative alimony where the parties were married for thirty-three years, and the wife, 51 years old, had a high school education with no further training or employment skills. We remanded the *Queen* case for a further award of alimony. Moreover, in *Wyant, supra,* this Court remanded an award of rehabilitative alimony to the circuit court for further consideration, where, *inter alia,* the income-earning abilities of the parties had not been adequately considered and where the final order of the circuit court did not explain the decision to award rehabilitative alimony, rather than permanent alimony.

In *Louk v. Louk,* 184 W.Va. 164, 399 S.E.2d 875 (1990), this Court held that a circuit court abused its discretion in transforming a permanent alimony award into a rehabilitative alimony award. Furthermore, this Court noted in *Louk* that no change in circumstances appeared in the case which would justify a modification of the original alimony award. 184 W.Va. at 167, 399 S.E.2d at 878. Finally, in *Gorby, supra,* we reversed a final order where the circuit court "failed to make any findings of fact or conclusions of law to support its award of rehabilitative alimony." 180 W.Va. at 62, 375 S.E.2d at 426.

Here, the 1984 divorce order, as well as the Separation and Property Settlement Agreement, provided that alimony would be payable to the appellant by the appellee for three years "without interruption for any reason," and would be payable through a fourth year, subject to the appellant's remarriage or death, neither of which events occurred. According to the divorce order and Agreement, alimony payable after the fourth year would be "subject to judicial review." The final order of November 2, 1994, reveals that the circuit court determined that the alimony payable to the appellant was rehabilitative alimony, even though, as stated above, the circuit court had previously indicated that the alimony was permanent. That confusion as to the nature of the alimony provision merely emphasizes the admonition in *Molnar,* set forth above, that it is important that "sufficient findings of fact be made by the circuit court" to explain the basis for a rehabilitative alimony award.

The 1984 divorce order and Agreement do not mention the term "rehabilitative alimony." Furthermore, inasmuch as both rehabilitative and permanent alimony are periodically "subject to judicial review" in this State, the use of that phrase in the divorce order and Agreement would not be sufficient to define the alimony as rehabilitative alimony. Moreover, the statements in the final order of November 2, 1994, to the effect that the appellant was capable of rehabilitating herself in 1984 and that a substantial period of time has since passed, without any more than a cursory reference to such factors as the

appellant's present income-earning ability, age and health, do not comport with the requirements of *Molnar* and its progeny concerning rehabilitative alimony. Consequently, the circuit court committed error in determining the alimony payable to the appellant to be rehabilitative alimony, rather than permanent alimony.

Of course, alimony, whether permanent or rehabilitative, is subject to modification. *W.Va.Code*, 48–2–15 [1993]; *W.Va.Code*, 48–2–16 [1984]; syl. pts. 6 and 7, *Wood v. Wood*, 190 W.Va. 445, 438 S.E.2d 788 (1993); syl. pt. 2, *Yanero v. Yanero*, 171 W.Va. 88, 297 S.E.2d 863 (1982). Furthermore, as this Court stated in *Zirkle v. Zirkle*, 172 W.Va. 211, 217, 304 S.E.2d 664, 671 (1983): "[T]he primary standard to determine whether or not a trial court should modify an order awarding alimony is a substantial change of circumstances." Moreover, as we held in syllabus point 3 of *Goff v. Goff*, 177 W.Va. 742, 356 S.E.2d 496 (1987): "The party petitioning for a modification of the support provisions of a divorce decree bears the burden of showing a substantial change of circumstances."

In syllabus point 2 of *Yanero v. Yanero*, 171 W.Va. 88, 297 S.E.2d 863 (1982), this Court, discussing an earlier version of *W.Va. Code*, 48–2–16 [1984], observed: "By its terms, *W.Va.Code* sec. 48–2–16 [1976] requires a circuit court to consider the financial needs of the parties, their incomes and income earning abilities and their estates and the income produced by their estates in determining the amount of alimony to be awarded in a modification proceeding." *See also* syl. pt. 5, *Wood, supra;* syl. pt. 2, *Law v. Law,* 186 W.Va. 376, 412 S.E.2d 777 (1991); syl., *Phillips v. Phillips,* 184 W.Va. 727, 403 S.E.2d 744 (1991); syl., *Louk, supra;* syl. pt. 2, *Mullins v. Mullins,* 179 W.Va. 214, 366 S.E.2d 662 (1988); *Annot.,* 18 A.L.R.2d 10 (1951).

In this action, the arguments of the appellee concerning whether the circumstances of the parties have changed are unconvincing. The minor child of the parties was 17 years old at the time of the 1984 divorce and reached the age of majority shortly thereafter. Moreover, the dwelling house was made available to the appellant pursuant to the 1984 divorce order and the Agreement, and that consideration has remained unaltered. As indicated above, in October 1989, the circuit court, in refusing to terminate alimony, stated that "there has been no material change in circumstances" concerning these parties. In any event, the record before us reveals that the circumstances of the parties have remained relatively unchanged since the 1984 divorce and that the income of the appellee has arguably increased. Neither the recommendation of the family law master nor the final order of the circuit court contains findings, within the meaning of syllabus point 2 of *Yanero, supra,* concerning any change in the circumstances of the parties since the divorce, with regard to a modification of the alimony award.

In *Nichols v. Nichols,* 160 W.Va. 514, 236 S.E.2d 36 (1977), this Court stated in the syllabus point that the question of alimony is within the sound discretion of the circuit court, and the action of the circuit court concerning alimony will not be disturbed upon appeal "unless it clearly appears that such discretion has been abused." *See also Marilyn H., supra,* 193 W.Va. at 204, 455 S.E.2d at 573. Here, however, the modification was based primarily upon the passage of time since the 1984 divorce and not upon the proper factors enunciated in our case decisions. Accordingly, the final order of the Circuit Court of Jefferson County entered on November 2, 1994, is reversed, and the alimony payment of $525 per month is ordered to be reinstated. This action is remanded to the circuit court for proceedings consistent with this opinion.

Reversed and remanded.